UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JEAN WESTCOTT,

                Plaintiff,              **MEMORANDUM AND ORDER**
                                                           12-CV-4183 (FB)

  -against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
------------------------------------------------------------x

*Appearances:*                                           *For the Defendant:*
*For the Plaintiff:*                                   LORETTA E. LYNCH, ESQ.
CHARLES E. BINDER, ESQ.              United States Attorney
Law Offices of Harry J. Binder and     ROBERT R. SCHRIVER, ESQ.
Charles E. Binder, P.C.                          Special Assistant United States Attorney
60 East 42nd Street, Suite 520             Eastern District of New York
New York, NY 10165                             271 Cadman Plaza East
                                                        Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

        Plaintiff Jean Westcott seeks review of the final decision of the Commissioner of Social Security ("Commissioner")[1] denying her application for disability benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings.

        The parties agree that, because a medical doctor's testimony was excluded entirely from the decision denying her benefits, a remand is necessary. They disagree, however, about whether the remand should be for calculation of benefits or for further proceedings. Westcott argues that calculation of benefits is appropriate, in any event, because there is substantial evidence that she is disabled due to her ulcerative colitis. She contends that the Administrative Law Judge

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Colvin as the named defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

("ALJ") violated the treating physician rule, failed to evaluate her credibility properly, and improperly relied on the Medical-Vocational Guidelines. The Commissioner disagrees and argues that calculation of benefits is inappropriate because the omitted testimony was the only error, and since the rest of the ALJ's decision does not support a finding of disability it is the only factor that could make a difference in the determination.

Remand for calculation of benefits is appropriate only where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand for further proceedings is proper. *Rosa*, 168 F.3d at 82–83.

As the Court cannot say that "application of the correct legal standard could lead to only one conclusion, "further proceedings are appropriate." *Schaal v. Apfel,* 134 F.3d 497, 504 (2d Cir. 1998). The omitted doctor's testimony conflicted with the Commissioner's final decision, and "the [Commissioner]," and not the court, must "weigh conflicting evidence in the record." *Id.* Far from serving "no purpose," *Parker*, 626 F.2d at 235, further proceedings here will permit the ALJ to conduct the necessary analysis of the excluded testimony, which will impact the ultimate determination of whether Westcott was disabled during the appropriate period.

I.

Westcott has filed four different applications for Supplemental Security Income ("SSI") and was finally awarded benefits on her fourth application, filed on November 3, 1994. She

is currently receiving benefits and has received them continuously for 19 years since the decision on her 1994 claim.

Between Westcott's third and fourth applications, the SSA entered into a settlement agreement that provided a class of disability claimants in *Stieberger v. Sullivan*, 801 F. Supp. 1079 (S.D.N.Y. 1992), the option to request re-opening of, and to obtain new decisions on, claims decided at the ALJ or Appeals Council level between October 17, 1981 and July 2, 1992.[2] In 2000, Westcott was screened into the *Stieberger* class based on her first application, which had been denied by an ALJ on August 31, 1989. This claim was reopened as a *Stieberger* claim for the period August 1, 1989 to November 2, 1994 (the "*Stieberger* period"). AR at 104-07.[3] In a redetermination letter dated October 15, 2001, the SSA found that Westcott was not under a disability for the *Stieberger* period. AR at 113-14. Over the next eight years, Westcott's claim went through multiple rounds of administrative appeals.

Following a second remand by the SSA Appeals Council, a third ALJ hearing was held on November 5, 2009. The ALJ considered the case *de novo,* then issued a decision on May 25, 2010, finding, for a third time, that Westcott was not disabled during the *Stieberger* period. In the decision, the ALJ recited the familiar five-step process set forth in the Social Security Regulations, *see* 20 C.F.R. § 404.1520, and detailed her findings. Westcott timely appealed the third decision. On July 7, 2012, the Commissioner's Appeals Council denied her request for review, thereby making the ALJ's decision on May 25, 2010, the final decision of the Commissioner. AR at 3. Westcott

---

[2]Claims denied or terminated at any administrative level between October 1, 1981, and October 17, 1985, were also included in the *Stieberger* class.

[3]All citations to "AR" are to the Administrative Record.

3

timely sought judicial review.

## II.

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Westcott first contends that the ALJ erred by failing to find at Step Three that, during the *Stieberger* period from 1988 to 1994, she met or medically equaled a listed impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Westcott relies chiefly on the testimony of Dr. Bernard Gussoff, and the ALJ's failure to consider his review of the medical evidence. An ALJ must, "[r]egardless of its source, . . . evaluate every medical opinion" she receives. 20 C.F.R. § 416.927(c). Nonetheless, the ALJ failed to mention Dr. Gussoff in her decision. Instead, she included only a conclusory statement: "Particular attention has been given to listed impairment 5.06 of the listed impairments. However, a review of the medical evidence shows that the specific requirements of this listed impairment are not established by the record." AR at 24. Although the ALJ incorporated her prior 2007 decision by reference, even that decision provided little analysis. *See* AR at 20, 90-91. As the Commissioner acknowledges, the ALJ in her 2007 decision merely relied on her own interpretation of the medical evidence. This was error. Both then and now, the ALJ should have provided the required legal analysis and explanation for not crediting Dr. Gussoff's testimony — particularly when it conflicted with the ALJ's finding based on the remaining evidence.

Westcott also argues that the ALJ failed to apply the treating physician rule properly

4

with respect to two doctors, Dr. Marshall and Dr. Chhabra. Under the rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). Both doctors provided opinions that Westcott was disabled and unable to work because of her medical condition. The ALJ declined to give either opinion controlling weight, and the Court concludes that this did not violate the treating physician rule, because: (1) a medical source's conclusion that an individual is disabled is not entitled to controlling weight; and (2) the conclusions of Dr. Marshall and Dr. Chhabra are not supported by clinical findings and other evidence in the record.

As an initial matter, the treating physician rule does not require deference to Dr. Marshall and Dr. Chhabra's conclusions that Westcott is disabled because the "ultimate finding of whether a claimant is disabled and cannot work" is an issue reserved to the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). "[S]tatement[s] by a medical source that you are 'disabled' or 'unable to work'" are not "medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)-(d)(1), 416.927(d)-(d)(1). The Commissioner need "not give any special significance to the source" of those opinions. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Snell*, 177 F.3d at 133. Thus, the assessments by both doctors of Westcott's ultimate disability status are not entitled to controlling weight because the treating physician rule does not govern issues reserved to the Commissioner.

Moreover, as noted, a treating physician's opinion is controlling only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

5

inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also* 416.927(c)(2) (same). The ALJ explained correctly that the record lacks evidence to support Dr. Marshall's opinions for the relevant time period. Although records and test results dated years after Dr. Marshall was Westcott's treating physician support a diagnosis of ulcerative colitis, evidence for the period that Dr. Marshall treated her is lacking, despite subpoena requests from the SSA. *See* AR at 23.[4] If anything, the medical record includes reports that contradict a history of ulcerative colitis spanning the time before Dr. Marshall began treating Westcott — for example, tests in 1990 at Mary Immaculate Hospital ruled out ulcerative colitis. AR at 327. The ALJ also explained adequately that Dr. Chhabra's opinions are not supported by medical evidence. Dr. Chhabra only examined Westcott once before writing his 2003 report, and it was at least 9 years after the relevant *Stieberger* period. *See* AR at 491-98. He provided no references to clinical or laboratory diagnostic evidence in completing his report, instead writing that Westcott's symptoms had been present since 1981 according to her own reports (e.g., Dr. Chhabra wrote in his notes, "as per patient"). AR at 497. Nevertheless, Dr. Chhabra later, in 2005, accepted Dr. Marshall's opinion that Westcott was disabled and unable to work during the *Stieberger* period, an opinion that continued to lack supporting medical evidence. Accordingly, the ALJ did not err by declining to rely on the unsupported conclusions of Dr. Marshall and Dr. Chhabra.

Westcott next contends that the ALJ improperly discredited her statements about her symptoms and limitations. To evaluate credibility, an ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce

---

[4] The ALJ's attempts to develop the record with additional evidence from Dr. Marshall may have been unsuccessful because Dr. Marshall died at an indeterminate time after he last treated Westcott. *See* AR at 23.

his symptoms, and second, evaluate the intensity, persistence, and limiting effects of those symptoms. *See* 20 C.F.R. § 404.1529(b)-(c). The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96–7. Furthermore, the ALJ may not discredit subjective complaints solely due to a lack of objective support. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). In her decision, the ALJ recited the seven factors that must be considered when a claimant's subjective complaints suggest greater severity than can be shown solely by objective medical evidence, *see* 20 C.F.R. § 404.1529(c)(3), and found that, "in this instance, the claimant's allegations are disproportionate to the record." AR at 25.

To reach her conclusion, the ALJ analyzed numerous pieces of evidence. Laboratory tests were normal throughout the period, and there was no evidence to corroborate Westcott's assertion that she required blood transfusions. Westcott gave birth during the *Stieberger* period and cared for six children without assistance. *See* AR at 25. In addition to the tests, discussed above, that ruled out ulcerative colitis in early 1990, early tests in 1992 were positive only for an unrelated condition: a urinary infection for which she received an antibiotic, Vibramycin, and a diagnosis of urethritis. Westcott went without treatment for months at a time, and from 1990 to early 1995 she gained weight, which conflicts with the findings that would be expected for her condition. Finally, her treatment regimen included nothing unusual in either the type or dosage of medication she received, and hospital records show that she responded well, without notable side effects, when treated as an outpatient throughout the relevant period and during her inpatient stay in April 1993.

In short, the ALJ's credibility determination was proper because it was supported by evidence that Westcott was not as thoroughly disabled throughout the *Stiebeger* period as she alleged; and the ALJ reasonably found that Westcott's statements concerning the "intensity,

7

persistence, and limiting effects" of her symptoms were not supported by the record. 20 C.F.R. § 404.1529(b)-(c). The Court notes, however, that, even though the ALJ's analysis is supported, upon remand the ALJ should conduct a new credibility analysis in light of Dr. Gussoff's omitted testimony.

Finally, Westcott argues that the ALJ inappropriately relied on the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids") to determine that she was not disabled. At the fifth and final step of the disability review process, the burden shifts to the Commissioner to show that the claimant can perform work that exists in substantial numbers in the economy. *See* 20 C.F.R. § 404.1520(4)(v). The ALJ must consider the claimant's RFC and age, education, and work experience. *Id.* "If a claimant suffers only from exertional impairments, e.g., strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable [G]rids." *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996). But exclusive reliance is inappropriate "where the nature of an individual's impairment does not result in [exertional] limitations," or it results in a "combination of exertional and nonexertional limitations which cannot be wholly determined under [the Grids]." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e). The applicability of the Grids should be considered on a case-by-case basis. *Pratts*, 94 F.3d at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986)). "Where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the application of the grids is inappropriate." *Id.* Thus, before applying the Grids, the ALJ must first analyze whether their application is appropriate.

The ALJ determined at Step Four that Westcott had an RFC that allowed her to perform the full range of light work. Westcott challenges this finding because, she contends, she

suffered from significant nonexertional limitations as a result of her abdominal pain and need to use the bathroom. For the *Stieberger* period, the ALJ failed to analyze the impact, if any, that Westcott's nonexertional limitations had on her work capacity. The Commissioner argues, in effect, that the ALJ's finding that Westcott had an RFC allowing her to perform a full range of light work should be considered tantamount to a finding of no nonexertional limitations. The Court disagrees. Even though the ALJ's credibility assessment was proper, it does not follow that merely because Westcott's symptoms were not as completely debilitating as she claimed, that they also had *no* limiting effect on her work capacity. Upon remand, the ALJ must engage in the analysis required under *Pratts* to determine whether application of the Grids is appropriate, and if it is not, to obtain testimony from a vocational expert. *See* 94 F.3d at 39.

## III

For the foregoing reasons, the Commissioner's motion is granted and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

/s/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 1, 2013

9